UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 2:17-CV-14271-ROSENBERG/MAYNARD

GREAT DIVIDE INSURANCE COMPANY,
for itself and on behalf of Aventura Construction
Corporation,

    Plaintiff,

v.

AMERISURE INSURANCE COMPANY, and
DRAWDY CONCRETE CONSTRUCTION, LLC,

    Defendants.
_____/

### ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court on Plaintiff Great Divide Insurance Company's Motion for Summary Judgment, *see* DE 77, and Defendants Amerisure Insurance Company and Drawdy Concrete Construction, LLC's Motion for Summary Judgment, s*ee* DE 75.[1] The motions are now ripe. Having considered all relevant filings in this matter, Plaintiff's Motion for Summary Judgment [DE 77] is **GRANTED IN PART AND DENIED IN PART** and Defendants' Motion for Summary Judgment [DE 75] is **GRANTED IN PART AND DENIED IN PART**.

### A. BACKGROUND[2]

Aventura Construction Corporation ("Aventura") entered into a contract ("Major Contract") to build a Cumberland Farms convenience store. DE 78-1. The Major Contract states

---

1 Defendants Amerisure and Drawdy filed a combined motion for summary judgment.
2 The facts in this section are undisputed, unless indicated otherwise.

that the "Contractor shall ensure that any sub-contractors engaged by Contractor to fulfill the terms of this Master Contract shall also purchase and maintain insurance coverage and comply with all other indemnities, warrants, and provisions of this insurance exhibit as follows." *Id.* at 35. The Major Contract also states the insurance requirements for Aventura and any subcontractors, including that the insurance "[m]ust be an occurrence-based policy which covers all aspects of insured's operations including blanket contractual liability, products and completed operations coverage, bodily injury liability . . . ." *Id. See also id.* at 18 (requiring that the "Contractor shall incorporate into any subcontracts or agreement its subcontractors, the requirements of this Section without modification."). Great Divide Insurance Company ("Great Divide") is Aventura's insurer.

Aventura entered into a subcontract (the "Subcontract") with Drawdy Concrete Construction ("Drawdy") in which Drawdy agreed to "[p]rovide labor, material and necessary equipment to complete the concrete and masonry per plan and specification . . . ." DE 78-2 at 2. The Subcontract requires that Drawdy obtain insurance "throughout the entire performance of this agreement" and name Aventura as an additional insured. *Id.* at 4. The Subcontract also states that the "[s]ubcontractor assumes all risk that contractor assumes toward owner within the parameters of the scope of work associated with the contract." *Id.* at 10. The Subcontract contains an indemnification clause which states that Drawdy "expressly agrees to indemnify and save harmless Aventura Corp. and owner for all claims, demand, suits, costs or expenses because of bodily injury, sickness or diseases sustained by any person(s) including his employees or damage to property arising out of his operations, work or materials under this Subcontract agreement." *Id.* at 4.

Drawdy obtained insurance from Amerisure Insurance Company ("Amerisure"). *See* DE 78-3. The Amerisure policy includes two relevant endorsements. One endorsement, the "Contractor's Blanket Additional Ensured Endorsement," Form 70 48 03 04 ("Blanket Endorsement"), states that an additional insured on the policy is only covered for the named insured's "ongoing operations performed for that additional insured, unless the written contract or agreement or the certificate of insurance requires 'your work' coverage (or wording to the same effect) in which case the coverage provided shall extend to 'your work' for that additional insured." DE 78-4 at 27. The policy contains another endorsement titled "Additional Insured – Owners, Lessees or Contractors – Completed Operations," Form No. CG 20 37 07 04 ("Completed Operations Endorsement"). The Completed Operations Endorsement expressly overrides the Blanket Endorsement "as needed by contract and shown on [the] certificate of insurance on file with the company." DE 78-4 at 91. When the Completed Operations Endorsement applies, it provides insurance "for 'bodily injury' or 'property damage' caused, in whole or in part, by 'your work' at the location designated and described in the schedule of this endorsement performed for that additional insured and included in the 'products-completed operations hazard.'" *Id.* The relevant distinction between these two endorsements is that the Blanket Endorsement only provides coverage for incidents that happen while Drawdy is on site whereas the Completed Operations Endorsement provides coverage for incidents arising from Drawdy's work even after Drawdy has completed the job. Amerisure issued a Certificate of Liability Insurance listing Aventura as the certificate holder. DE 78-5 at 2.

The Cumberland Farms store was substantially completed on October 7, 2014. "The Core States Construction, the civil engineer, issued a punch list, identifying defects in Drawdy Concrete's work on the curbs and ADA ramp." DE 78 ¶ 18. Drawdy sent workers back to the

3

store to remedy some of the issues identified in the punch list. *Id.* ¶ 19. There is a conflict as to who is at fault for the ADA ramp being built at an increased grade. Aventura and Great Divide allege that Drawdy was negligent. Drawdy alleges that it built the ADA ramp at an increased grade due to Aventura's negligence: Aventura placed gasoline tanks too close to the Cumberland Farms building resulting in a narrowing of the sidewalks, which caused the ADA ramp to be built at an increased grade. *See* DE 78-3 at 15–16; DE 78-8 at 34–35.

On November 13, 2014, after Drawdy had completed its operations, Bruce Henkle, a customer at the store, tripped and fell over the ADA ramp outside of the store. *Id.* ¶ 22. Mr. Henkle filed suit alleging that Aventura, through its agents, servants and/or employees, was negligent in constructing the ADA ramp. DE 78-11. Aventura and Great Divide tendered the lawsuit to Drawdy and Amerisure for defense and indemnification. DE 78-12. Amerisure disclaimed coverage. DE 78-13. Great Divide ultimately settled the suit for $150,000 and spent $80,169.43 in defense costs and attorney's fees. DE 78-16 ¶ 9–10.

Great Divide, pursuant to the assignment provision in its policy, brought this action on behalf of itself and Aventura. The Complaint states claims against Amerisure for breach of contract for breach of the duty to defend (Count I) and breach of contract for breach of the duty to indemnify (Count II); in the alternative, the Complaint states a claim against Drawdy for breach of contract for failure to secure requisite additional insured insurance and for failing to indemnify (Count III). Defendant Amerisure counterclaimed seeking a declaration that the Subcontract does not require Drawdy to name Aventura as an additional insured for completed operations. DE 15 at 10. Defendant Drawdy counterclaimed seeking a declaration that Drawdy fulfilled it insurance obligations under the Subcontract, that the indemnity provision in the Subcontract is void and unenforceable under Florida law, and that the Subcontract does not

require Drawdy to name Aventura as an additional insured for completed operations. DE 20 at 10–11. The parties have filed cross-motions for summary judgment.

## B. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The existence of a factual dispute is not by itself sufficient grounds to defeat a motion for summary judgment; rather, "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A dispute is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (citing *Anderson*, 477 U.S. at 247–48). A fact is material if "it would affect the outcome of the suit under the governing law." *Id.* (citing *Anderson*, 477 U.S. at 247–48).

In deciding a summary judgment motion, the Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006). The Court does not weigh conflicting evidence. *See Skop v. City of Atlanta*, 485 F.3d 1130, 1140 (11th Cir. 2007). Thus, upon discovering a genuine dispute of material fact, the Court must deny summary judgment. *See id.*

The moving party bears the initial burden of showing the absence of a genuine dispute of material fact. *See Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). Once the moving party satisfies this burden, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., LLC*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "[t]he non-moving party must make a

sufficient showing on each essential element of the case for which he has the burden of proof."
*Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Accordingly, the non-moving party must produce evidence, going beyond the pleadings, to show that a reasonable jury could find in favor of that party. *See Shiver*, 549 F.3d at 1343.

**C. ANALYSIS**

The Court's analysis proceeds as follows: first, the Court analyzes whether Great Divide has standing to sue; second, the Court analyzes whether the subcontract requires Drawdy to obtain completed operations coverage and whether Amerisure's policy covers completed operations; and, third, the Court analyzes whether Drawdy breached its duty to indemnify and whether the contractual indemnity clause violates Fla. Stat. § 725.06.

A. Standing

Amerisure and Drawdy claim that Great Divide does not have standing because Great Divide "has no contract with Amerisure or Drawdy and received no valid assignment from its insured, Aventura." DE 75 at 8. Great Divide responds that it has standing because "Aventura contractually agreed to assign all its rights against any party to whom it may recover on account of Great Divide's payment under the policy." DE 81 at 15.

The Court agrees with Great Divide because its insurance policy with Aventura includes an assignment of Aventura's rights under the policy to Great Divide. Great Divide's policy states that "[i]f the insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us." DE 78-16 at 34. Accordingly, Aventura transferred its rights to Great Divide, Great Divide has standing, and Defendants Amerisure and Drawdy's motion for summary judgment as to the issue of standing is denied.

B. Complete Operations Coverage

The parties dispute whether Amerisure's insurance covers only Drawdy's ongoing operations or whether it also covers its completed operations. Ongoing operations coverage provides insurance coverage only for the time when Drawdy is working on site, whereas completed operations coverage provides insurance related to Drawdy's work after Drawdy has completed its work. The determination of whether the Amerisure insurance policy covers completed operations is critical because it is undisputed that Mr. Henkle fell after Drawdy had completed its work. *See* DE 75 at 5. If Amerisure's policy covers completed operations, then Amerisure breached its contractual duty to defend and indemnify when it refused Great Divide's tender. If the policy does not cover completed operations, then Amerisure did not breach its contract.

Under Florida law, "insurance contracts are construed according to their plain meaning." *Garcia v. Fed. Ins. Co.*, 969 So. 2d 288, 291 (Fla. 2007) (citation omitted). "[A]mbiguity exists in an insurance policy only when its terms make the contract susceptible to different reasonable interpretations, one resulting in coverage and one resulting in exclusion. Absent ambiguity in the policy language, however, rules of construction are unnecessary and courts will apply the plain language of the policy." *HC Waterford Props., LLC v. Mt. Hawley Ins. Co.*, No. 08-22158-CIV, 2009 WL 2600431, at *3 (S.D. Fla. 2009) (citations omitted). Ambiguous insurance policies "must be construed against the drafter and in favor of the insured." *Washington Nat. Ins. Corp. v. Ruderman*, 117 So. 3d 943, 951 (Fla. 2013) (citations omitted).

In reviewing Amerisure's insurance policy and the Subcontract, it is unambiguous that it does not cover completed operations. The Blanket Endorsement covers only ongoing operations. DE 78-4 at 27. The Completed Operations Endorsement overrides the Blanket Endorsement to

cover completed operations only "as needed by contract and shown on certificate of insurance on file with the company." DE 78-4 at 91. Neither of these two conditions was met.

First, the certificate of insurance that lists Aventura as a Certificate Holder does not state that it covers completed operations. *See* DE 78-5 at 2. Second, the subcontract between Aventura and Drawdy does not require Drawdy to obtain complete operations coverage. The Subcontract requires that Drawdy obtain "insurance throughout the entire performance of this agreement." DE 78-2 at 4. Under the section entitled "Insurance" in the Subcontract, the Subcontract provides specifications for the type of insurance that Drawdy was required to obtain. *Id.* Nowhere in the Insurance section is there any requirement that Drawdy obtain the same type of insurance that Aventura was required to obtain in the Master Contract. *Id.* Drawdy's obligation to obtain insurance was limited to insurance for ongoing operations, not completed operations.

Great Divide argues that Drawdy had to acquire completed operations coverage. Its argument is as follows: (1) the Subcontract requires that the Subcontractor assume the risks of the Major Contract, *see id.* at 12 ("Subcontractor assumes all risk that contractor assumes toward owner within the parameters of the scope of work associated with the contract."); (2) the Major Contract requires the Contractor to obtain completed operations coverage, *see* DE 78-1 at 35 (stating that Aventura and any subcontractors must obtain "an occurrence-based policy which covers all aspects of insured's operations including blanket contractual liability, products and completed operations coverage, bodily injury liability"); (3) therefore, the Subcontractor had to obtain completed operations coverage.

This argument is flawed, however, because it is predicated upon a finding that when Drawdy "assume[d] the risks" of the Major Contract, it also agreed to comply with all of the affirmative obligations that Aventura agreed to in the Major Contract. Assuming the risks of the

8

contract is not the same as agreeing to be bound by the affirmative obligations, such as the obligation to purchase a particular type of insurance. *See Cas. Indem. Exch. v. Penrod Bros., Inc.*, 632 So. 2d 1046, 1046–47 (Fla. Dist. Ct. App. 1993) (stating that tenant who assumed the obligation to purchase fire insurance did not also assume the risk of loss by fire). A covenant to "assume[] all *risk* that the contractor assumes" does not also obligate the subcontractor to assume all of the *obligations* that the contractor assumes, such as the obligation to purchase the same insurance that the contractor was required to purchase. The Subcontract could have contained a flow-down clause which required Drawdy to be bound by all of the obligations in the Major Contract. *See, e.g.*, *Centex/Worthgroup, LLC v. Worthgroup Architects, L.P.*, 365 P.3d 37, 40 (N.M. Ct. App. 2015) (noting a "flow-down clause" in a subcontract that required the subcontractor to "assume all obligations, risks[,] and responsibilities" that the general contractor had assumed in the major contract). But it did not. The Subcontract requires only that Drawdy assume all of the risks that Aventura did in the Major Contract, not all of the obligations as well. Thus, Drawdy was not obligated to purchase completed operations insurance.

Great Divide argues that this case is like *Travelers Prop. Cas. Co. v. Amerisure Ins. Co.*, 161 F. Supp. 3d 1133 (N.D. Fla. 2015). The facts of the instant case, however, are distinguishable from *Travelers* because the subcontract in that case clearly required the subcontractor to purchase insurance that complied with the insurance requirements in the major contract. In *Travelers*, the general contractor's insurer, Travelers, sued its subcontractor's insurer, Amerisure, to recover attorney fees and costs incurred in defending the general contractor. *Id.* at 1134. Amerisure argued that the contractor was not an additional insured under Amerisure's policy. The court disagreed finding that the general contractor was an additional insured, *id.*, and that the coverage extended to completed operations, *id.* at 1136. In that case,

9

however, the subcontract was clear about the insurance requirements of the subcontractor. The Court stated that "the subcontract required [the subcontractor] to provide the 'same types of insurance [as] specified by the Prime Contract.' The prime contract required coverage for 'Completed Operations.'" *Id.* at 1137. Here, the Subcontract does not require Drawdy to obtain completed operations coverage but rather states that it needed insurance "throughout the entire performance of this agreement." DE 78-2 at 4. The Subcontract requires that Drawdy assume the risks that Aventura had assumed in the Major Contract, but it does not require Drawdy to purchase the same insurance that Aventura was required to purchase. Again, assuming the risk does not obligate a party to purchase a particular type of insurance.

Because the Subcontract does not require Drawdy to obtain completed operations insurance and the Certificate of Insurance does not show that the insurance covered completed operations, the Completed Operations Endorsement does not override the Blanket Endorsement. The Amerisure policy, thus, covers only ongoing operations and Amerisure did not breach its contractual duty to defend[3] or to indemnify when it disclaimed coverage. Accordingly, Great Divide's motion for summary judgment against Amerisure is denied and Amerisure's motion for summary judgment against Great Divide is granted as to Great Divide's claim that Amerisure breached its duty to defend and its duty to indemnify.

---

3 The Court recognizes that, under Florida law, the duty to defend is broader than the duty to indemnify. *Jones v. Florida Ins. Guar. Ass'n, Inc.*, 908 So.2d 435, 442–43 (Fla. 2005). "It is well settled that an insurer's duty to defend its insured against a legal action arises when the complaint alleges facts that fairly and potentially bring the suit within policy coverage." *Id.* It is undisputed that Mr. Henkle's Second Amended Complaint contains allegations that he fell after the store was opened and Drawdy had completed its work. *See* DE 78-11 ¶ 3. The Complaint, therefore, does not state facts that potentially bring the suit within Amerisure's policy coverage because that coverage was limited to ongoing operations. Amerisure did not breach its duty to defend.

### C. Claim Against Drawdy

In the alternative to its claims against Amerisure, Great Divide brings a claim against Drawdy for breach of contract for failure to secure the requisite additional insured insurance and for failing to indemnify Aventura. However, Drawdy did not have a duty to obtain additional insured insurance for completed operations and, therefore, did not breach the contract due to its failure to secure additional insurance.

With respect to the claim that Drawdy breached its contractual duty to indemnify Aventura, Drawdy and Amerisure argue that the indemnity provision in the Subcontract is void and unenforceable under Fla. Stat. § 725.06. DE 75 at 11–13. Section 725.06 voids indemnification clauses in which a party seeks indemnity for its own negligence unless the indemnification clause contains a monetary limit of the amount of indemnification. Fla. Stat. § 725.06. Amerisure argues that the indemnity clause is void because the indemnification clause does not contain a monetary limit and because Great Divide is seeking indemnity, on behalf of itself and Aventura, for Aventura's negligence. DE 75 at 11–13. Great Divide responds that § 725.06 is irrelevant because it only applies when the indemnitee seeks indemnification for its own negligence, *Fed. Ins. Co. v. W. Waterproofing Co. of Am.*, 500 So. 2d 162, 164 (Fla. Dist. Ct. App. 1986), and Great Divide is only seeking indemnity for Drawdy's negligence. DE 81 at 17–20.

The Court finds that the indemnity clause does not violate § 725.06 to the extent that Great Divide seeks indemnity only for the negligence caused by Drawdy. *W. Waterproofing*, 500 So. 2d at 162. The Subcontract contains an indemnification clause which states that Drawdy "expressly agrees to indemnify and save harmless Aventura Corp. and owner for all claims, demand, suits, costs or expenses because of bodily injury, sickness or diseases sustained by any

person(s) including his employees or damage to property *arising out of his* operations, work or materials under this Subcontract agreement." 78-2 at 4 (emphasis added).

Section 725.06 reads:

> Any portion of any agreement or contract for or in connection with, or any guarantee of or in connection with, any construction, . . . wherein any party referred to herein promises to indemnify or hold harmless the other party to the agreement, contract, or guarantee for liability for damages to persons or property caused *in whole or in part* by any act, omission, or default of the indemnitee arising from the contract or its performance, shall be void and unenforceable unless the contract contains a monetary limitation on the extent of the indemnification that bears a reasonable commercial relationship to the contract and is part of the project specifications or bid documents, if any.

Fla. Stat. § 725.06 (emphasis added). The indemnity provision does not contain a monetary limitation on the indemnification.

There is record evidence that Aventura's construction error in placing gasoline tanks too close to the Cumberland Farms building resulted in a narrowing of the sidewalks and caused Drawdy to build the ADA ramp at an increased grade. *See* DE 78-3 at 15–16; DE 78-8 at 34–35. Great Divide, however, has stipulated that "it is seeking indemnification solely against Drawdy Concrete for Drawdy's own acts or omissions." DE 81 at 18. Thus, the indemnification clause does not violate § 725.06 to the extent Aventura is seeking indemnification for the negligence of Drawdy. *See Cuhaci & Peterson Architects, Inc. v. Huber Const. Co.*, 516 So. 2d 1096, 1097 (Fla. Dist. Ct. App. 1987) (stating that § 725.06 did not apply because the plaintiff was not making a claim for indemnity for its own negligence).[4] Because § 725.06 only applies to indemnification clauses where the indemnitee is seeking indemnification for its own negligence, *id.* at 1097, and Great Divide has stated that it is only seeking to be indemnified for the

---

4 Great Divide's stipulation is consistent with the indemnity clause in this case and with Florida law.

negligence of Drawdy, DE 81 at 18, § 725.06 does not void the indemnity clause in the Subcontract.

For the foregoing reasons, Great Divide's motion for summary judgment is granted as to its request for a declaratory judgment that Drawdy is liable for breach of contract for its failure to indemnify,[5] but the Court's declaratory judgment is limited insofar as Drawdy is only liable for such a breach to the extent Drawdy was negligent in the underlying construction. Drawdy's negligence has not been adjudicated by any court, nor is there any suit pending on this issue, and Aventura's alleged comparative negligence remains unadjudicated as well. The parties did not brief this issue on summary judgment; they sought simply a declaratory judgment as to whether the indemnification clause in the Subcontract violates § 725.06. Even if the parties had briefed this issue of negligence on summary judgment, the Court cannot weigh the evidence in the summary judgment record to determine the respective comparative negligence of Drawdy and Aventura and, pursuant to the parties' representations to this Court, no party desires a trial on this issue.[6] Accordingly, the Court finds that the indemnification clause is not void under § 725.06 but only to the extent that Aventura seeks indemnification for Drawdy's negligence. The Court's declaratory judgment is limited insofar as it only applies to the extent Drawdy's negligence has been determined or admitted.

---

5 It therefore follows that Defendants' motion for summary judgment is denied as to this issue.
6 The parties informed the Court that "both parties agree that the insurance coverage question can be answered as a matter of law" and requested that the case be removed from the trial docket. DE 84 at 1. The record is not clear as to which parties' negligence caused Mr. Henkle's injuries. In response to the questions of fact in the summary judgment record pertaining to negligence, Great Divide simply chose to narrow the scope of its requested to relief to a contingent, limited declaratory judgment. DE 81 at 18. To the extent the factual dispute in the record pertaining to Aventura's actions is legally irrelevant in the context of comparative negligence, this is not something that the parties have briefed to the Court. The Court therefore takes no position about which party is at fault for the alleged negligence in this case.

### D. CONCLUSION

Based on the foregoing, it is hereby **ORDERED AND ADJUDGED**:

1. Plaintiff's Motion for Summary Judgment [DE 77] is **GRANTED IN PART AND DENIED IN PART** in that summary judgment is entered in favor of Plaintiff as to Count III's claim of breach of contract for Drawdy's failure to indemnify to the extent Great Divide seeks indemnity only for Drawdy's negligence;

2. A final declaratory judgment will be entered separately by this Court, finding that Drawdy is liable for a breach of contract to the extent Drawdy is found to be negligent or admits to negligence for its actions arising out of the facts at issue in this case;

3. Plaintiff's Motion for Summary Judgment [DE 77] is **DENIED** in all other respects;

4. Defendants Amerisure and Drawdy's Motion for Summary Judgment [DE 75] is **GRANTED IN PART AND DENIED IN PART** in that summary judgment is entered in favor of Defendant Amerisure as to Count I for breach of contract for failure to defend and Count II for breach of contract for failure to indemnify because Amerisure's policy did not cover completed operations;

5. Defendants Amerisure and Drawdy's Motion for Summary Judgment [DE 75] is **DENIED** in all other respects;

6. The parties shall submit a joint proposed final judgment in Microsoft Word format to rosenberg@flsd.uscourts.gov within two (2) court days of the date of rendition of this Order; and

7. The Clerk of Court is directed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers in Fort Pierce, Florida this 13th day of March, 2018.

*(signed)* Robin L. Rosenberg

ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE